980 F.2d 692
 Earnest H. JACKSON, Administrator of the Estate of Lena
Russell, Deceased, Plaintiff-Appellant,
v.
PLEASANT GROVE HEALTH CARE CENTER, Beverly California
Corporation d/b/a Pleasant Grove Health Care
Center, Defendants-Appellees.
 No. 92-6163.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 4, 1993.
 
 J. Gusty Yearout, Don Lee Hall, Yearout Myers & Traylor, PC, Birmingham, Ala., for plaintiff-appellant.
 Larry W. Harper, Brently Alan Tyra, Porterfield, Harper & Mills, P.A., Birmingham, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before BIRCH, Circuit Judge, JOHNSON, Senior Circuit Judge, and THOMAS*, Senior District Judge.
 JOHNSON, Senior Circuit Judge:
 
 
 1
 Earnest H. Jackson appeals the district court's entry of judgment notwithstanding the verdict in favor Pleasant Grove Health Care Center ("Pleasant Grove") after a jury returned a verdict in favor of Jackson for $1.3 million.
 
 I. STATEMENT OF FACTS
 
 2
 Jackson is the administrator of the estate of Lena Russell. From February 7, 1984, until January 12, 1985, Russell was an intermediate care patient at Pleasant Grove. When Russell was admitted to Pleasant Grove, she was 70 years old and had been diagnosed as suffering from schizophrenia, mental retardation and hypertension. She required assistance with daily activities and at times was confused and disoriented. While at Pleasant Grove, Russell repeatedly left her room, and on at least six occasions, Russell actually left the premises.
 
 
 3
 Sometime between 5:00 and 5:30 a.m. on the morning of January 12, 1985, Russell left Pleasant Grove. Although some of the exits at Pleasant Grove are equipped with alarms, no alarm sounded on the morning that Russell left. The Pleasant Grove staff noted Russell's absence at 5:30 a.m., and immediately began searching the premises. At 8:00 a.m., after determining that Russell was no longer on the grounds, they contacted the Pleasant Grove Police Department, who began searching for Russell. The Police Department was especially concerned because Russell was ill-dressed for the cold--the temperature that day only reached 33 degrees and Russell was wearing a thin cotton dress and a light sweater. Despite assistance from the local rescue squad and civil defense department, the Police Department was unable to locate Russell.
 
 
 4
 At 5:00 p.m. John Pope phoned the Police Department to report that he had seen an elderly woman wearing a cotton dress at the far edge of his backyard. The police asked Pope to go keep an eye on her until they arrived, but by the time he returned to his backyard, the woman had disappeared. A large woods lay between Pope's backyard and Pleasant Grove, which Pope described as "untamed." After Pope's call, the police focused on the area around Pope's backyard, searching through the rough wooded area and bringing in a dog to track Russell. Although the dog was able to pick up a scent, the track ended at a blacktop road. Russell was never found.
 
 
 5
 On September 5, 1985, Jackson filed a petition for presumption of death, but after a hearing at which both Jackson and Pleasant Grove presented evidence, the probate court denied Jackson's motion, finding that Jackson had presented insufficient evidence of Russell's death. Jackson filed a second petition for presumption of death on March 14, 1990. Relying on Alabama's presumption of death statute,[1] the probate court granted this petition and on August 13, 1990, issued letters of administration to Jackson as representative of the Russell's estate.
 
 
 6
 On August 28, 1990, Jackson filed this wrongful death action against Pleasant Grove in state court on behalf of Russell's estate. Pleasant Grove removed the case to federal court on diversity grounds. Prior to trial Pleasant Grove filed a motion in limine to bar the expected testimony of Jackson's nursing home expert, Clay Dean. Pleasant Grove contended that Dean was not qualified to testify as to the standard of care for nursing homes because he was not a "similarly situated health care provider" as required by the Alabama Medical Liability Act (the "Liability Act").[2] The district court denied the motion. During the course of trial, Pleasant Grove renewed its objection to Dean's expert qualifications twice, but each time the district court denied the motion.
 
 
 7
 After the jury returned a verdict awarding the plaintiff $1.3 million in damages, Pleasant Grove filed a motion for judgment notwithstanding the verdict ("JNOV") or, in the alternative, for a new trial. The district court granted Pleasant Grove's motion for JNOV, finding that Jackson's expert was not qualified under the Liability Act to testify as to the standard of care for nursing homes, and that his testimony had been improperly admitted. The district court held that when the expert's testimony was struck from the record, Jackson had failed to make out a prima facie case, and thus Pleasant Grove was entitled to JNOV. Alternatively, the district court held that the cumulative effect of Jackson's closing argument was overwhelmingly prejudicial, and thus warranted the granting of a new trial should the grant of JNOV be overturned on appeal.
 
 II. STANDARD OF REVIEW
 
 8
 This Court reviews the grant of a motion for JNOV de novo, considering all the evidence "in the light and with all reasonable inferences most favorable to the party opposed to the motion." Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir.1969) (en banc). "[I]f there is substantial evidence opposed to the motion[ ], ... the motion[ ] should be denied and the case submitted to the jury." Id.
 
 
 9
 This Court generally reviews a district court's ruling on a motion for a new trial for abuse of discretion. When the district court grants the motion for a new trial, this Court's review is broader and the application of the abuse of discretion standard more stringent. Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1556 (11th Cir.1984).
 
 III. DISCUSSION
 A. Pleasant Grove's motion for JNOV
 
 10
 To prevail in a wrongful death action against a nursing home such as Pleasant Grove, the Liability Act requires that Jackson establish (1) the appropriate standard of care, (2) that Pleasant Grove failed to comply with that standard of care, and (3) that Pleasant Grove's failure to comply proximately caused Russell's wrongful death. See Ala.Code § 6-5-542(2). The district court granted Pleasant Grove's motion for JNOV after finding that Jackson failed to establish (1) the appropriate standard of care and (2) that Pleasant Grove's failure to comply with the standard of care proximately caused Russell's death.
 
 
 11
 In cases that arise under the Liability Act, the plaintiff must ordinarily offer expert testimony as to the appropriate standard of care.[3] Rosemont, Inc. v. Marshall, 481 So.2d 1126, 1129 (Ala.1985); Parrish v. Spink, 284 Ala. 263, 224 So.2d 621 (1969). At trial, Jackson offered the expert testimony of Clay Dean to establish the standard of care owed by Pleasant Grove to Russell. During the course of the trial, Pleasant Grove unsuccessfully challenged Dean's qualifications as an expert three times. Nevertheless, after the jury returned its verdict in favor of Jackson, the district court determined that it was error to have admitted Dean's testimony. Without Dean's testimony, Jackson had failed to establish the appropriate standard of care. Accordingly, the district court held that it was bound to grant Pleasant Grove's motion for JNOV.
 
 
 12
 The district court erred in excluding Dean's testimony when ruling on the motion for JNOV. This Circuit has never considered the propriety of a district court granting a motion for JNOV by ruling that certain evidence presented at trial is inadmissible. However, the three Circuits that have considered the issue have all held that such an action is error. See Douglass v. Eaton Corp., 956 F.2d 1339, 1343 (6th Cir.1992); Sumitomo Bank v. Product Promotions, Inc., 717 F.2d 215, 218 (5th Cir.1983); Midcontinent Broadcasting Co. v. North Central Airlines, Inc., 471 F.2d 357, 358-59 (8th Cir.1973). See also 21 Charles A. Wright and Kenneth A. Graham, Jr., Federal Practice and Procedure § 5041, at 228-29 (1977) ("The judge cannot grant a directed verdict or judgment notwithstanding the verdict by ignoring evidence he has admitted on the ground that the admission was error."). But see Aloe Coal Co. v. Clark Equipment Co., 816 F.2d 110, 115-16 (3d Cir.) (dicta finding these cases unpersuasive), cert. denied, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987).
 
 
 13
 We hold that a district court may not exclude previously admitted evidence when deciding a motion for JNOV. The rationale for prohibiting the district court from disregarding previously admitted evidence is reliance. If evidence is ruled inadmissible during the course of the trial, the plaintiff has the opportunity to introduce new evidence. However, when that evidence is ruled inadmissible in the context of deciding a motion for JNOV, the plaintiff, having relied on the evidence already introduced, is unable to remedy the situation. See Midcontinent, supra, 471 F.2d at 358-59. The course of proceedings below suggests that Jackson's reliance in this case was particularly great. Pleasant Grove challenged Dean's qualifications as a nursing home expert three times during trial. Three times the district court ruled that Dean was qualified. Had the district court ruled during trial that Dean's testimony was inadmissible, Jackson could have brought in another expert to testify as to the appropriate standard of care for nursing homes, thereby precluding Pleasant Grove's motion for JNOV.[4]
 
 
 14
 The district court also held that JNOV was appropriate because Jackson had failed to show that Pleasant Grove's negligence had proximately caused Russell's death. In making that determination, the district court stated it was bound by our opinion in Daniels v. Twin Oaks Nursing Home, 692 F.2d 1321 (11th Cir.1982). In Daniels, the plaintiff son brought a wrongful death action against a nursing home after his father disappeared from the nursing home. The plaintiff argued that the jury could infer that his father disappeared into the swamp next to the nursing home and died of natural causes. We held such an inference was not supported by the facts, and the connection between the disappearance and death by exposure were too tenuous to support an inference that the nursing home's negligence proximately caused the decedent's death. Daniels, supra, 692 F.2d at 1328.
 
 
 15
 Contrary to the district court's assertions, Daniels is not controlling. While the two cases are superficially similar, the facts in this case strongly support an inference of death by exposure. First, unlike the decedent in Daniels who disappeared in June, Russell disappeared in January. Second, the plaintiff in Daniels offered no evidence to support death by exposure; Jackson's expert testified that Russell would have died from exposure after two days. Third, the swamp into which the Daniels decedent may have disappeared was surrounded on three sides by an insurmountable fence, thus making it unlikely the decedent ever entered the swamp; Pleasant Grove was surrounded by a 3000 acre woods, much of it "untamed." These differences satisfy the concern we expressed in Daniels--that the evidence "support an explanation of the cause of death that is sufficiently articulated that the jury is not permitted to engage in an unallowable degree of speculation." Daniels, supra, 692 F.2d at 1328.[5]B. Pleasant Grove's motion for a new trial
 
 
 16
 In the alternative, the district court granted Pleasant Grove's motion for a new trial on the ground that the closing argument made by Jackson's counsel was filled with improper and prejudicial statements. Pleasant Grove objected eleven times to remarks made by Jackson's counsel during the course of the closing argument. The district court sustained ten of those eleven objections, each time giving curative instructions. Nevertheless, the district court found that the prejudice was so overwhelming that a new trial was required.
 
 
 17
 We cannot say that the district court abused its discretion in granting Pleasant Grove a new trial. Although the district court sustained ten of Pleasant Grove's eleven objections, and offered curative instructions in each instance, the cumulative effect of the remarks could have gone beyond the point of being curable. See McWhorter v. City of Birmingham, 906 F.2d 674, 678 (11th Cir.1990) (new trial may still be required even where curative instructions given). Based on our review of the record, we believe that point was surpassed in this case.
 
 IV. CONCLUSION
 
 18
 The district court's order granting Pleasant Grove's motion for judgment notwithstanding the verdict is REVERSED. That portion of the district court's order granting Pleasant Grove's motion for a new trial is AFFIRMED.
 
 
 
 *
 Honorable Daniel H. Thomas, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation
 
 
 [1]
 Ala.Code § 43-8-6 (1975) ("A person who is absent for a continuous period of five years ... is presumed to be dead.")
 
 
 [2]
 Ala.Code §§ 6-5-540 to -552 (Supp.1992)
 
 
 [3]
 The Liability Act requires that the expert witness be a "similarly situated health care provider" as that term is defined by the Liability Act. See Ala.Code § 6-5-548
 
 
 [4]
 Moreover, the rule does not leave the district court without alternatives. When the district court determines after a verdict is returned that certain evidence was erroneously admitted at trial, the district court may order a new trial. See Douglass, supra, 956 F.2d at 1344; Sumitomo, supra, 717 F.2d at 218; Midcontinent, supra, 471 F.2d at 358
 
 
 [5]
 Pleasant Grove unsuccessfully advances two other arguments in support of its motion for JNOV. First, Pleasant Grove argues that the statute of limitations bars this action. Alabama Code § 6-5-410 requires that all wrongful death actions be commenced within two years of the death of the decedent. Although Russell disappeared in 1985, she was not presumed dead until five years had passed. See Ala.Code § 43-8-6(c). Under this statute, Russell is presumed to have died in 1990, and thus Jackson's wrongful death action, commenced that same year, is timely. See Peak v. United States, 353 U.S. 43, 45, 77 S.Ct. 613, 614, 1 L.Ed.2d 631 (1957) (in suit to collect on life insurance, statute of limitations runs from date of presumption not date of disappearance)
 Pleasant Grove also argues that Jackson's claim is barred by res judicata. Because the probate court decided in 1985 that Russell had not died in 1985, Pleasant Grove argues that Jackson is now barred from arguing in this case that Pleasant Grove's negligence caused Russell's death in 1985. In those instances where Alabama courts have given the probate court's judgment preclusive effect, the cause of action being relitigated was identical to the cause of action before the probate court, and the probate court had jurisdiction to entertain the cause of action. See, e.g., Broughton v. Merchants National Bank of Mobile, 476 So.2d 97, 101 (Ala.1985); Orton v. Cheatham, 293 Ala. 639, 309 So.2d 94, 96-97 (1975). In contrast, the cause of action here is not identical, and the probate court did not have jurisdiction to entertain Jackson's wrongful death suit. See Wallace v. State, 507 So.2d 466 (Ala.1987) (jurisdiction of probate court limited to those matters committed to it by statute).