559 So.2d 74 (1990)
MARYLAND MAINTENANCE SERVICE, INC., Appellant,
v.
Vittorio PALMIERI and Bertha Palmieri, His Wife, Appellees.
No. 88-1802.
District Court of Appeal of Florida, Third District.
January 23, 1990.
Rehearing Denied April 20, 1990.
Lanza, O'Connor, Armstrong, Sinclair & Tunstall, Coral Gables, and Rhea P. Grossman, Miami, for appellant.
Horton, Perse & Ginsberg and Guillermo Sostchin, Miami, for appellees.
Before NESBITT, COPE and GERSTEN, JJ.
GERSTEN, Judge.
Appellant, Maryland Maintenance Service, Inc. (Maryland Maintenance), appeals from a final judgment and cost judgment in favor of appellees Vittorio Palmieri and Bertha Palmieri, his wife, on the Palmieris' claims for damages arising from a slip and fall. We affirm.
Maryland Maintenance had a written contract with Calder Race Course (Calder) for providing cleaning and custodial services *75 during racing meets at Calder. Under the agreement, Maryland Maintenance was responsible for providing cleaning and custodial services to areas of Calder including the clubhouse, grandstands, floors, seating areas and stairways.
On December 21, 1984, Vittorio Palmieri was injured while attending the race meet at Calder, when he slipped and fell in the outside seating area. The accident occurred at around 3:30 p.m., during betting time. Vittorio Palmieri brought suit against Maryland Maintenance and Calder for personal injury damages, and Bertha Palmieri, his wife, brought suit against them for loss of consortium.
At trial, Vittorio Palmieri testified that after he fell, he put his hand down and felt something wet and that his clothing was wet, as well. Mr. Palmieri stated that he was a frequent visitor to Calder and that he had never seen anyone inspecting or cleaning the outside seating area on a routine basis. Mr. Palmieri also said that patrons ate food and consumed beverages in the outside seating area and that during the course of a race day, the area would become sloppy and dirty.
A witness to Mr. Palmieri's accident testified that there was a pool of liquid at the place where Mr. Palmieri fell. According to the witness, the liquid had to have been there for at least a couple of races because it was dirty. The witness concurred with Mr. Palmieri's testimony that during the course of the day the outside seating area would become sloppy and dirty. Further, the witness stated that the floor also would become strewn with newspapers, racing forms, soda and beer containers, and food.
A Calder security guard testified that there was a spill at the site of the accident, but that he did not know how long the spill had been there. The security guard also stated that patrons would usually report spills in the seating area, and then he would cover the spill with paper so it could be seen. He would then get the cleaning crew to clean it up.
The manager for Maryland Maintenance testified that it was industry practice not to clean the outside seating area during racing time. He further stated that the area became sloppy and messy by the end of the race day.
A Calder manager testified he understood that Maryland Maintenance employees were not assigned on a routine basis to clean up spills in the outside seating area during betting hours because of inconvenience to patrons. However, the Calder manager stated that when Maryland Maintenance was notified of a spill or garbage in the outside seating area during betting hours, an employee of Maryland Maintenance would be dispatched to clean it up. According to the Calder representative, this procedure was not set forth in any contract between Maryland Maintenance and Calder. He also agreed with the testimony of Maryland Maintenance's manager that it was industry practice not to clean the outside seating area during the race day.
At the close of the evidence presented by the Palmieris and at the conclusion of all the trial evidence, Maryland Maintenance moved for a directed verdict, which the trial court denied. The jury subsequently returned a verdict in favor of the Palmieris, awarding damages against Calder and Maryland Maintenance in the amount of $106,600.00. Following the jury verdict, Maryland Maintenance moved for a judgment notwithstanding the verdict or for a new trial, which the trial court denied. The trial court then entered a final judgment pursuant to the jury verdict, and also entered a cost judgment in favor of the Palmieris, against Calder and Maryland Maintenance. Maryland Maintenance subsequently brought this appeal.
Maryland Maintenance contends the trial court erred in denying its motions for a directed verdict or judgment notwithstanding the verdict because: (1) as an independent contractor employed by Calder, Maryland Maintenance owed no legal duty to the Palmieris; and (2) assuming arguendo the existence of a legal duty, the Palmieris failed to prove that Maryland Maintenance did not exercise reasonable care in its procedures.
*76 On Maryland Maintenance's first contention, we rule that Maryland Maintenance owed a legal duty to the Palmieris. Maryland Maintenance had a contract with Calder for providing cleaning and custodial services during racing meets. The contract specifically provided for Maryland Maintenance to be responsible for areas of Calder, including the seating areas. Nowhere in the contract did it state that these services were not to be provided on a routine basis during the race day. The rule is well settled that privity is not an element of a cause of action in tort. A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973); Navajo Circle, Inc. v. Development Concepts Corporation, 373 So.2d 689 (Fla. 2d DCA 1979). Further, a defendant's liability extends to persons foreseeably injured by his failure to use reasonable care in performance of a contractual promise. Navajo Circle, Inc. v. Development Concepts Corporation, 373 So.2d at 691-692; Luciani v. High, 372 So.2d 530 (Fla. 4th DCA 1979); Gallichio v. Corporate Group Service, Inc., 227 So.2d 519 (Fla. 3d DCA 1969); see Gelman v. Miami Elevator Company, 242 So.2d 156 (Fla. 3d DCA 1970).
This case is similar to Gelman v. Miami Elevator Company, 242 So.2d at 156. In Gelman, a patron of a store was injured as he was alighting from an elevator. The patron brought suit against the company responsible for maintaining the mechanical condition of the elevator. The trial court entered summary judgment in favor of the maintenance company on the ground that the service contract between the store proprietor and the maintenance company was not of benefit to business invitees. This court reversed, recognizing, "[s]uch actions have been held to be maintainable by an injured member of the public against a party responsible by contract for the maintenance." Gelman, 242 So.2d at 157. Here, Maryland Maintenance was responsible by contract for cleaning and custodial services at Calder, and it may be held liable to members of the public, such as the Palmieris, for its negligence in performing that contract.
We next consider Maryland Maintenance's second contention. In this contention, Maryland Maintenance argues the Palmieris failed to prove that Maryland Maintenance did not exercise reasonable care. We are not persuaded. We find that the Palmieris did present sufficient evidence to raise a question for the jury regarding Maryland Maintenance's failure to use reasonable care in its procedures.
In order for a plaintiff to recover for injuries received in a slip and fall, the plaintiff must show that the defendant responsible for the premises had actual or constructive notice of the dangerous condition. Nance v. Winn Dixie Stores, Inc., 436 So.2d 1075 (Fla. 3d DCA 1983), review denied, 447 So.2d 889 (Fla. 1984). Constructive notice may be shown by presenting evidence that the condition existed for such a length of time that in exercise of ordinary care, the defendant should have known of the condition, Nance v. Winn Dixie, 436 So.2d at 1076; Schmidt v. Bowl America Florida, Inc., 358 So.2d 1385 (Fla. 4th DCA 1978); Sabugo v. GDS Drugs, Inc., 350 So.2d 22 (Fla. 3d DCA 1977); Winn Dixie Stores, Inc. v. Williams, 264 So.2d 862 (Fla. 3d DCA 1972), or by showing that the condition occurred with regularity and, consequently, was foreseeable, Fazio v. Dania Jai-Alai Palace, Inc., 473 So.2d 1345 (Fla. 4th DCA 1985); Nance v. Winn Dixie Stores, Inc., 436 So.2d at 1077; See McCurry v. Investment Corporation of Palm Beach, 548 So.2d 689 (Fla. 4th DCA 1989).
In the present case, sufficient evidence was presented for the jury's consideration regarding Maryland Maintenance's constructive notice of the liquid on the floor. Evidence was presented that the liquid had to have been there for at least several races and that there was an ongoing problem with waste on the floor. Moreover, the Florida Supreme Court has stated that "reasonable care as applied to a race track requires a higher degree of diligence than it does when applied to a store, bank or such like place of business." Wells v. Palm Beach Kennel Club, 160 Fla. 502, 35 So.2d 720, 721 (1948); see also Fazio v. Dania Jai-Alai Palace, Inc., 473 *77 So.2d at 1346 (quoting same language from Wells with approval).
The fact that it was industry practice not to clean the outside seating area during the race day does not conclusively establish whether or not Maryland Maintenance was negligent. See Nesbitt v. Community Health of South Dade, Inc., 467 So.2d 711 (Fla. 3d DCA 1985). As the United States Supreme Court explained in Texas & Pacific Railway Company v. Behymer, 189 U.S. 468, 470, 23 S.Ct. 622, 47 L.Ed. 905 (1903), "[w]hat usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." See also Nesbitt, 467 So.2d at 714 (quoting same language from Behymer with approval).
Accordingly, we affirm the final judgment and cost judgment against Maryland Maintenance on the Palmieris' claims for damages arising from the slip and fall.[1]
COPE, Judge (dissenting).
I respectfully dissent.
There is no dispute that the contract between Maryland Maintenance and Calder called for Maryland Maintenance to clean the outside seating area at issue in this case. It is equally clear that the contract did not specify when that cleaning would occur. The uncontroverted trial testimony established that Calder directed Maryland Maintenance to clean the outdoor seating area only after the conclusion of each racing day, or in the event that a Calder employee specifically informed a Maryland Maintenance employee of the existence of a spill in the outdoor seating area.[2] That was the parties' agreement, and that was the parties' course of performance under the contract. See Lalow v. Codomo, 101 So.2d 390, 393 (Fla. 1958) ("the actions of the parties may be considered as a means of determining the interpretation that they themselves have placed upon the contract"); Doral Country Club, Inc. v. Curcie Brothers, Inc., 174 So.2d 749 (Fla. 3d DCA) (same), cert. denied, 180 So.2d 656 (Fla. 1965); see also Restatement (Second) of Contracts §§ 219-223 (1979). Both Calder and Maryland Maintenance agree that Maryland Maintenance was entirely in compliance with its obligations under the contract.[3]
In the present case it is undisputed that plaintiff fell on a spill in the outdoor seating area, during the race day. It is also undisputed that Calder had neither marked the spill nor called Maryland Maintenance to clean it up. Under the terms of its agreement with Calder, Maryland Maintenance was obeying instructions  staying out of the outdoor seating area unless requested by Calder to go in  and was in compliance with its contractual obligations.
The plaintiff contends that, by reason of the Calder-Maryland Maintenance contract, Maryland Maintenance owed a duty to him, and breached that duty. Plaintiff successfully persuaded the trial court that the contract required Maryland Maintenance to perform general inspection and cleaning of the outdoor seating area during races, even though that was not the interpretation or the practice of the actual parties to the contract  Calder and Maryland Maintenance.
The question thus posed is whether Maryland Maintenance can be held liable for negligently performing a contractual duty that it never had. That question must be answered in the negative, for any right *78 acquired by the plaintiff "as against either of the directly contracting parties, cannot be broader, rise higher, or be considered better, than the rights inter se of parties to the contract, through whom such gift promisee's right of action must be derived." Fidelity & Casualty Co. v. Plumbing Department Store, 117 Fla. 119, 121, 157 So. 506, 507 (1934); accord Seward v. South Florida Securities, 96 F.2d 964, 967 (5th Cir.1938) ("third party beneficiary's right of action on the promise cannot rise higher than the rights of the contracting party....") (citations omitted).[4]
Absent the existence of a duty owed to plaintiff, Maryland Maintenance was entitled to a directed verdict as a matter of law. See Westchester Exxon v. Valdes, 524 So.2d 452, 455 (Fla. 3d DCA 1988); Seitz v. Surfside, Inc., 517 So.2d 49 (Fla. 3d DCA 1987), review denied, 525 So.2d 880 (Fla. 1988); see also Florida Power & Light Co. v. Lively, 465 So.2d 1270, 1273 (Fla. 3d DCA) (en banc), review denied, 476 So.2d 674 (Fla. 1985) (existence of duty is question of law for the court). The judgment should therefore be reversed.
The plaintiff's real quarrel is with Calder, not Maryland Maintenance. Calder is responsible for the condition of its own premises, and Calder determined the scope of the cleaning services it purchased from Maryland Maintenance. If there was a deficiency in the maintenance of the premises, then that issue must be resolved in litigation between the plaintiff and Calder, not Maryland Maintenance.
NOTES
[1] It is unnecessary for us to address Maryland Maintenance's appeal of the cost judgment because it was based solely on the ground that if the final judgment against Maryland Maintenance were reversed, the cost judgment against Maryland Maintenance must likewise be reversed.
[2] In the latter circumstance the Calder employee would mark with paper the site of the spill to be cleaned.

Calder precluded all other cleaning in the outdoor seating area during races because of the potential hazard and inconvenience to its patrons posed by cleaning staff in that area, which was ordinarily a crowded one. See generally, e.g., Nitram, Inc. v. Cretan Life, 599 F.2d 1359, 1371 (5th Cir.1979).
[3] Indeed, the plaintiff conceded that, although he had attended Calder many times, he had never seen anyone cleaning in the outdoor seating area on a routine basis.
[4] Gelman v. Miami Elevator Company, 242 So.2d 156 (Fla. 3d DCA 1970), relied on by the majority, is inapposite. There the plaintiff's theory was that the elevator company had breached its contractual obligation. Here there is no evidence to support the existence of a breach.