COWART, Judge,
concurring specially.
The plaintiff in this case, injured when an elevator did not “level” with the floor, sued the company that had contracted with the owner of the elevator (a bank) to do maintenance service work on the elevator. The amended complaint alleges that the maintenance company “negligently” failed to perform its contractual duty to maintain the elevator, resulting in injuries to the plaintiff. The complaint recognizes that the defendant’s only duty relating to this elevator was its obligations under some agreement between the defendant maintenance company and the elevator owner. The complaint alleges that the details of the agreement are unknown to the plaintiff but are “well-known” to the defendant. The complaint does not allege that the plaintiff had contractual privity with the defendant[1] or that the parties to the maintenance agreement intended the plaintiff to be a third party beneficiary of the agreement. The complaint does not allege that the elevator service maintenance company agreed with, promised or guaranteed the elevator owner or the plaintiff that the elevator would never mis-level. Neither does the complaint allege that the defendant’s contractual duty to the elevator owner was co-extensive in scope, extent and degree to the elevator owner’s legal (tort) duty to the plaintiff to use due care to maintain the elevator in a reasonably safe condition.
Apparently direct actions by an injured user against an elevator maintenance company, such as this one, are not unusual[2] *627 although it is also common for one injured by a faulty elevator to sue the owner and thereafter for the owner or its subrogated insurer to seek indemnification or contribution from some elevator maintenance company with which the owner has contracted.[3] The elevator company’s liability to the owner depends, of course, upon the agreement between the parties.[4] The service agreement may only be that the elevator service company will grease the elevator cables; i.e. the assumed duties may not encompass the condition allegedly causing the plaintiff’s injuries. Also the elevator is a manufactured mechanical device that is not perfect and its leveling mechanism may get out of adjustment despite good maintenance. It is not a perfect world. Professionals (doctors, lawyers, engineers, etc.) are expected to only use their best efforts and the law requires them to only exercise the usual care of like professionals doing like work in their community, yet the mechanic servicing a piece of machinery is held to insure the result of his efforts.
The elevator service company did not manufacture the elevator. Machinery is prone to get out of adjustment, that is why it is often made so it can be adjusted.
If the injured plaintiff’s cause of action against the service company is based on the intent of the contracting parties that the plaintiff is a third party beneficiary of the contract provisions, must that theory not be properly pled and proven? In such an action on that contract theory, can the service company assert a defense of comparative negligence? What is the proper statute of limitations and proper measure of damages?
If service contracts between elevator maintenance companies and the elevator owners are held to create a duty from the service company to the general public for the violation of which duty members of the public have a cause of action in tort against the elevator service company for personal injuries, this confusion, or ignoring, of theory results in a confusion of the fundamental functional relationships between various entities and has some curious results. The contracting elevator service company may think its function is to perform service work on elevators but the service company, in effect, becomes the elevator owner’s insurer and the service company’s insurer is not only the elevator owner’s insurer but in effect is also the guarantor (or bondsman) of the contract obligations of the service company and also the elevator owner’s insurer. If the injured plaintiffs cause of action against the service company is actually in tort for breach of a duty imposed by law in favor of the public generally, how can the owner and service company by their express agreement modify or limit that duty of care or entirely eliminate that legal right in favor of persons not a party to the agreement?

. The law does not impose a duty upon one to enter into or assume contractual duties and obligations. Citizens are free to contract or not to contract, as they see fit, and to limit their contractual obligations as they please and to assume such obligations only to those persons with whom they chose to so become obligated. Traditionally, a plaintiff could recover for injuries or damage resulting from the defendant’s breach of obligation assumed by contract only if the defendant had assumed, and breached, a duty to the plaintiff. A plaintiff who was neither a party to a contract nor an express beneficiary of a contract obligation, had no cause of action against a defendant who breached a contract obligation with a third party. Cf. Winterbottom v. Wright, 10 M. & W. 109, 152 Eng.Rep. 402 (1842) which held that a defendant under contract with a postmaster to repair and maintain coaches would not be liable to the postmaster’s employee for injuries caused by the negligently maintained coach because the employee was not in privity of contract with the defendant. Is the modern postmaster's mechanic liable to any and all postal employees and any and all members of the public who may be injured by a negligently maintained motor vehicle? Apparently, the answer is yes. See Accomando v. United Forklift Corp., 548 So.2d 1192 (Fla. 4th DCA 1989). See also Maryland Maintenance Service, Inc. v. Palmieri, 559 So.2d 74 (Fla. 3d DCA 1990), rev. denied, 574 So.2d 142 (Fla.1990); Navajo Circle, Inc. v. Development Concepts Corp., 373 So.2d 689 (Fla. 2d DCA 1979).

. See Nicosia v. Otis Elevator Co., 548 So.2d 854 (Fla. 3d DCA 1989); Lombard v. Executive Elevator Service, Inc., 545 So.2d 453 (Fla. 3d DCA 1989); Davis v. Otis Elevator Co., 515 So.2d 277 (Fla. 5th DCA 1987), rev. denied, 520 So.2d 585 (Fla.1988); Reliance Electric Co., Haughton Elevator Division v. Humphrey, 427 So.2d 214 (Fla. 4th DCA 1983); Gelman v. Miami Elevator Company, 242 So.2d 156 (Fla. 3d DCA 1970). Gel-man seems to be the genesis of this practice in Florida and it relies on a non-elevator case (Gallichio v. Corporate Group Service, Inc., 227 So.2d 519 (Fla. 3d DCA 1969)) which was based on a third party beneficiary theory. Some of those cases seem to make a point of the fact that prior to its amendment in 1983, section 399.-02(5)(b), Fla.Stat., then section 399.02(6)(b), provided that the owner or hb duly appointed agent was responsible for the proper operation *627 and safe maintenance of the elevator. In 1983, the legislature deleted the words “or his duly appointed agent.” See Nicosia, which observes that the statutory amendment did not prohibit a claim of negligent maintenance against an elevator contractor. That does not appear to be the point. This statute does not create a cause of action in favor of elevator users against an elevator contractor for breach of its contract with the elevator owner.

. See, e.g., Hart Properties, Inc. v. Eastern Elevator Service Corp., 357 So.2d 257 (Fla. 3d DCA 1978); see also The Travelers Insurance Company v. VES Service Company, 576 So.2d 1349 (Fla. 1st DCA 1991).

. Some elevator service agreements even provide that the owner will indemnify the elevator service company for claims for negligence of the elevator service company. See Etiole International, N. V., v. Miami Elevator Company, 573 So.2d 921 (Fla. 3d DCA 1990).