# Third District Court of Appeal

## State of Florida

Opinion filed January 25, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-3094
Lower Tribunal No. 11-32791
_____

**Harriette Wilson-Greene,**
Appellant,

vs.

**The City of Miami, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Ronald C. Dresnick, Judge.

Lindsey M. Tenberg (Lighthouse Point), for appellant.

Walton Lantaff Schroeder & Carson and Stephanie M. Suarez and Michael H. Galex; Victoria Méndez, City Attorney, and Kerri L. McNulty, Assistant City Attorney, for appellees.

Before SUAREZ, C.J., and SALTER, J., and SHEPHERD, Senior Judge.

SHEPHERD, Senior Judge.

This is an appeal from an order granting summary judgment on liability in favor of a building owner and a maintenance company in a slip-and-fall accident case. We affirm.

**Factual and Procedural Background**

The accident in this case occurred in May 2008 at the lobby elevator bank at Miami Riverside Center, a building owned by the City of Miami. Vista Maintenance Services, Inc., had the maintenance contract for the building at the time of the accident. On the day of the incident, the plaintiff, Harriette Wilson-Greene, arrived at the building between 11:00 a.m. and noon to deliver some paperwork to the inspection division of the City Building Department, located on the second floor of the building. According to her own testimony, she took an elevator from the lobby to the second floor, just as she had done on two or three prior occasions. She did not see any substance on the floor before she entered the elevator nor did she see any substance on the floor during her previous visits to the building.

Wilson-Greene testified she spent "longer than 15 minutes" on the second floor conducting her business, and then returned to the lobby using an elevator in the same elevator bank. According to her testimony, after taking just a couple of steps out of the elevator, Wilson-Greene slipped and fell backwards in the hallway between the two facing banks of elevators that serve the building, hit her head, and

2

lost consciousness. When she regained consciousness, she observed a green substance all over her feet, sandals, between her legs, and on parts of her upper body. She also testified the substance was "not hot." The building incident report, which the parties stipulated was authentic, states the accident occurred at 11:15 a.m. and the substance was "soup that was on the floor in the hallway of the elevators." Wilson-Greene said the manager of the building's security company told her the substance was green pea soup. Although there is a restaurant in the lobby of the building, there is no evidence in the record that the restaurant was serving pea soup that day.[1]

Vista moved for summary judgment on the ground that it did not owe Wilson-Greene a legal duty to "constantly patrol and supervise the area where the incident occurred." Alternatively, if the court found it did owe a duty to Wilson-Greene, Vista argued it had no actual or constructive notice of the dangerous condition. At the hearing on Vista's motion for summary judgment, the City ore tenus moved for summary judgment on the same grounds. The trial court granted summary judgment in favor of both Vista and the City, and Wilson-Greene appeals from the judgments.

**Analysis**

---

[1] The restaurant is not a party to this appeal.

"The standard of review of a summary judgment order is de novo and requires viewing the evidence in the light most favorable to the non-moving party." Sierra v. Shevin, 767 So. 2d 524, 525 (Fla. 3d DCA 2000). A negligence claim has four elements: (1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to plaintiff." Bartsch v. Costello, 170 So. 3d 83, 86 (Fla. 4th DCA 2015). Generally,

> [t]he duty of the landowner to a business invitee is to maintain the premises in a reasonably safe condition and to warn the invitee of latent perils which are known or should be known to the owner but which are not known to the invitee or which, by the exercise of due care could not be known to him.

Storr v. Proctor, 490 So. 2d 135, 136 (Fla. 3d DCA 1986). Where a contract exists, "a defendant's liability extends to persons foreseeably injured by his failure to use reasonable care in performance of a contractual promise." Maryland Maint. Serv., Inc. v. Palmieri, 559 So. 2d 74, 76 (Fla. 3d DCA 1990).

The pertinent language of the maintenance contract between Vista and City provides that Vista is to "pay close attention to the 3-story lobby area" and "not to underestimate the lobby requirements . . . as this is a critical area of importance." Additionally, the contract states that Vista is to "police [the] area and rearrange furniture on a daily basis." Wilson-Greene argues, based upon this language, a reasonable jury could hold Vista liable for failing to use "reasonable and ordinary

4

care" in meeting its contractual obligations. We disagree. Wilson-Greene's argument, reduced to its essentials, is that Vista owed a duty to the building patrons **constantly** to patrol and supervise the area where the accident occurred. We believe Wilson-Greene reads more into the contract than the contract language can bear. The contract language did not create a contractual duty on Vista **constantly** to patrol the building. Nor, we add, does the language of the contract, which performed a dual function as the bid documentation to the City before the contract was awarded, hold Vista and the City to a heightened duty of care. We recognize that "[w]here an express provision within a professional services contract provides for a heightened standard of care . . ., the professional must perform in accordance with the terms of the contract." Sch. Bd. of Broward Cnty. v. Pierce Goodwin Alexander & Linville, 137 So. 3d 1059, 1065-66 (Fla. 4th DCA 2014) (citing CH2M Hill Se., Inc. v. Pinellas Cnty., 698 So. 2d 1238, 1240 (Fla. 2d DCA 1997) ("[I]f the professional contracts to perform duties beyond those required by ordinary standards of care, the quality of that performance must comport with the contractual terms."). In this case, while the contract does emphasize the importance of maintenance in the lobby area of the building, as in School Board of Broward County, the language is insufficient to place a heightened standard of care on Vista.

5

Additionally, there were no permissible inferences upon which Wilson-Greene could rely in defense of the motions for summary judgment to demonstrate the existence of constructive notice.

> In order for a plaintiff to recover for injuries received in a slip and fall, the plaintiff must show that the defendant responsible for the premises had actual or constructive notice of the dangerous condition. Constructive notice may be shown by presenting evidence that the condition existed for such a length of time that in exercise of ordinary care, the defendant should have known of the condition, or by showing that the condition occurred with regularity and, consequently, was foreseeable.

Palmieri, 559 So. 2d at 76; see also § 768.0755, Fla. Stat. (2010). In the instant case, there is no actual notice because no one saw the substance spill on the floor and no one knows how it got there. Thus, we are left to consider whether Vista and the City had constructive notice of the dangerous condition.

When considering whether there is an issue of fact for submission to a jury in transitory foreign substance cases, courts look to the length of time the condition existed before the accident occurred. Dominguez v. Publix Super Markets, Inc., 187 So. 3d 892, 894 (Fla. 3d DCA 2016). In this case, the jury would have to stack inferences to conclude that Vista and the City had constructive notice of a dangerous condition. Although it is true that a non-moving party to a summary judgment motion may set forth a genuine issue of material fact through "justifiable inferences from facts presented to the trial court," Carbonell v. BellSouth Telecommunications, Inc., 675 So. 2d 705, 706 (Fla. 3d DCA 1996), the stacking

6

of inferences is not permitted.  See Cohen v. Arvin, 878 So. 2d 403 (Fla. 4th DCA 2004).  The rule on the impermissible stacking of inferences provides:

> [I]n a civil case, a fact may be established by circumstantial evidence as effectively and as conclusively as it may be proved by direct positive evidence. The limitation on the rule simply is that if a party to a civil action depends upon the inferences to be drawn from circumstantial evidence as proof of one fact, it cannot construct a further inference upon the initial inference in order to establish a further fact unless it can be found that the original, basic inference was established to the exclusion of all other reasonable inferences.

Cohen at 405 (quoting Gelco Convention Servs. v. Pettengill, 710 So. 2d 581, 583 (Fla. 4th DCA 1998)).  In the instant case, additional facts are needed in order to reach the conclusion that the soup was on the floor long enough to cool without assuming other facts – such as that the soup was hot prior to it being spilled.  The mere presence of soup which is "not hot" on the floor is not enough to establish constructive notice as to Vista or the City.

Wilson-Greene relies heavily on Teate v. Winn-Dixie Stores, Inc., 524 So. 2d 1060 (Fla. 3d DCA 1988), for the argument that because the soup was "not hot" the jury could infer it was there for a substantial period of time for Vista and the City to have known of its existence.  We find Teate distinguishable from the instant case.  Teate slipped and fell on some peas in the frozen food department of a Winn-Dixie supermarket.  The plaintiff introduced evidence showing there was some water on the floor around the peas and no employee had cleaned the area for fifteen to twenty minutes before the fall.  Thus, Teate alleged the water was there

7

because the peas had been on the floor for some time and had thawed. Although Winn-Dixie countered that the water was a result of "permafrost" or ice crystals on the bag of peas that instantly melted when it hit the floor, Teate argued the jury could choose to believe this argument or could find the peas had been on the floor for a sufficient time to put Winn-Dixie on notice of the dangerous condition. Unlike in the instant case, the resolution of the issue in <u>Teate</u> did not require the jury to build one inference on another. The court properly reasoned,

> [s]ince it was established that there was some water on the floor, it was completely within the jury's province to decide why the water was there. The jury needed to draw only one inference from direct evidence to reach a decision as to the defendant's constructive notice of the condition. It was entitled to believe Teate and to select the inference that it did.

<u>Id.</u>

We conclude that where melting substances are involved, there is no need to infer the substance was previously frozen. Logic tells us that is a given. In the instant case, the jury first would need to infer that the substance was hot prior to spilling on the floor and infer from this that it was on the floor a sufficient amount of time for it to have cooled. This requires a jury to impermissibly stack inferences. We distinguish the other melting substances cases cited by Wilson-Greene for the same reasons. <u>See</u> <u>Camina v. Parliament Ins. Co.</u>, 417 So. 2d 1093, 1094 (Fla. 3d DCA 1982) (finding that plaintiff's slip and fall on thawed ice cream, which was "dirty and splattered," was "susceptible of the inference that the

8

condition existed beforehand . . . so as to make the issue of the defendant's constructive notice of the condition one to be resolved by the jury"); Grizzard v. Colonial Stores, Inc., 330 So. 2d 768, 769 (Fla. 1st DCA 1976) (where the substance plaintiff slipped on "was identified as partially frozen, partially liquefied orange juice concentrate" the court concluded, "a jury could find that the substance on the floor was there long enough to partially thaw").

For the foregoing reasons, the trial court properly granted summary judgment in favor of Vista and the City. Because we determine the lack of duty and constructive notice to be dispositive, we decline to address other arguments raised by Wilson-Greene. We therefore, affirm.

Affirmed.