# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D22-2821
LT Case No. 2020-CA-0370

_____

SANDRA LEFTWICH,

    Appellant,

    v.

WAL-MART STORES EAST, LP and
THOMAS SCHOENDORF,

    Appellees.

_____

On appeal from the Circuit Court for Hernando County.
Donald Scaglione, Judge.

Brian J. Lee, of Morgan & Morgan, Jacksonville, for Appellant.

Andrew S. Bolin and Christie Alisca, of Bolin Law Group, Tampa,
for Appellee, Wal-Mart Stores East, LP.

No Appearance for the Remaining Appellee.

February 22, 2024

KILBANE, J.

    Sandra Leftwich ("Appellant") appeals a final judgment entered pursuant to the trial court's order granting summary judgment in favor of Wal-Mart Stores East, LP ("Walmart") and Thomas Schoendorf. Appellant argues that summary judgment must be reversed because there exists a genuine dispute of

material fact regarding whether Walmart had constructive notice of a liquid on the floor that caused her to slip and fall. We affirm.

## Facts

In its order granting summary judgment, the trial court relied on its review of Walmart's video footage of the incident.[1] The order recounts the ten minutes leading up to the incident as follows:

> 3L.    Video footage of the incident area was captured, showing the events leading up to the subject. Neither the substance, nor the source can be seen in the video. However, the footage reveals the following in the last ten minutes before the incident:
>
>      a.     7:16:14 — Heath Peterson pulls a pallet across the action alley aisle on his way to an aisle.
>      b.     7:16:40 — A customer stands in the subject area without incident and stands nearby.
>      c.     7: 17:40 — A customer pushes a cart through the subject area without incident.
>      d.     7: 18:09 — A customer pushes a cart through the subject area without incident.

---

[1] The video is not provided in the record on appeal, but neither party disputes the summary judgment order's detailed recounting of what the video shows prior to the incident. It is also apparent from the record that a display in the center of the aisle obstructed a clear view of the floor thereby preventing the liquid itself from being viewable on the video. While a failure to include the video in the record on appeal can result in affirmance on the grounds of an incomplete record, we "affirm on the merits of the issue and not for a lack of record." *See Castaneda ex rel. Cardona v. Redlands Christian Migrant Ass'n, Inc.*, 884 So. 2d 1087, 1093 (Fla. 4th DCA 2004) (citing *Applegate v. Barnett Bank of Tallahassee*, 377 So. 2d 1150, 1152 (Fla. 1979)).

e. 7:19:09 — A customer pushes her cart full of items and a child sitting in it to the subject area parks it there as she stands next to the customer who has remained standing in the area since 7:16:40.

f. 7:20:43 -- The two customers leave the area.

g. 7:21:56 -- A customer pushes her cart through the subject area without incident.

h. 7:22:15 -- A customer pushes a cart through the subject area without incident.

i. 7:22:51 -- A customer walks through the subject area without incident.

j. 7:24:52 -- A customer walks through the subject area without incident.

k. 7:24:52 -- Two more customers walk through the subject area without incident.

l. 7:25:00 -- Plaintiff and Mr. Revels appear, and the incident occurs. Mr. Revels then swipes his foot across the floor.

It is undisputed that the liquid was not viewable on the video, but a clear liquid was discovered on the floor after the incident. It is further undisputed that Walmart had no prior knowledge of the liquid.

Appellant described the liquid as "a clear color" that was "a pretty good sized amount" but did not cover a whole floor tile. Although there were marks on the floor, Appellant maintained "the fluid itself was clear." Appellant's adult son, Revels, stated in his deposition that there were what "looked like wheel marks and footprints running through there." Appellant and Revels described the marks and footprints as dirty.

In support of its motion, Walmart submitted the deposition testimony of its former employee, Peterson, who was seen on the video pulling a pallet near the spill area nine minutes before the incident. The trial court's order noted that Peterson's pallet was not over the subject area or leaking. In his deposition, Peterson explained that he was almost always looking on the floors for spills and debris. Given the area of the alleged spill, Peterson unequivocally testified that he would have noticed the liquid had it already been on the floor. When asked how long the spill was on the floor, he stated that it would have been there for less than ten minutes.

3

<u>**Analysis**</u>

Summary judgment orders are reviewed de novo. *Oliver v. Winn-Dixie Stores, Inc.*, 291 So. 3d 126, 128 (Fla. 4th DCA 2020) (citing *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000)). "To prevail on a motion for summary judgment, a movant must show that (1) 'there is no genuine dispute as to any material fact' and (2) 'the movant is entitled to judgment as a matter of law.'" *Welch v. CHLN, Inc.*, 357 So. 3d 1277, 1278 (Fla. 5th DCA 2023) (quoting Fla. R. Civ. P. 1.510(a)). To make its determination, "[t]he court views the evidence in a light most favorable to the non-moving party, and a genuine dispute occurs when the evidence would allow a reasonable jury to return a verdict for that party." *Id.* (citing *Baum v. Becker & Poliakoff, P.A.*, 351 So. 3d 185, 189 (Fla. 5th DCA 2022); *Ibarra v. Ross Dress for Less, Inc.*, 350 So. 3d 465, 467 (Fla. 3d DCA 2022)). The alleged factual dispute must

> be both "material" and "genuine." Something is "material" if it relates to the substantive law. A material fact dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." While it is true that "inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion," the burden is on the non-movant to show that any such inference "is reasonable in light of [ ] competing inferences."

*Whitlow v. Tallahassee Mem'l Healthcare, Inc.*, 48 Fla. L. Weekly D1647 (Fla. 1st DCA Aug. 16, 2023) (alteration in original) (citations omitted) (first quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); and then quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986)).

"In actions arising from a plaintiff's slip and fall on a transitory substance in a business establishment, proof of the breach element is 'statutorily constrained' by section 768.0755, Florida Statutes." *Welch*, 357 So. 3d at 1278 (quoting *Encarnacion v. Lifemark Hosps. of Fla.*, 211 So. 3d 275, 278 (Fla. 3d DCA 2017)). Under Section 768.0755:

4

(1) If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:

(a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or

(b) The condition occurred with regularity and was therefore foreseeable.

§ 768.0755(1), Fla. Stat. (2019). "Section 768.0755 specifically places the burden on the plaintiff to prove that the business establishment had constructive knowledge of the hazard." *Struck v. Wal-Mart Stores E., LP*, No. 21-11012, 2021 WL 5052557, at *2 (11th Cir. Nov. 1, 2021) (quoting *Oliver*, 291 So. 3d at 128). Generally, fifteen to twenty minutes has been deemed "sufficient for defendants to be charged with knowledge of the condition and a reasonable time in which to correct it." *See Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166, 1169 (11th Cir. 2023) (citing *Winn Dixie Stores, Inc. v. Williams*, 264 So. 2d 862, 864 (Fla. 3d DCA 1972); *Lynch v. Target Stores, Div. of Dayton Hudson Corp.*, 790 So. 2d 1193, 1194 (Fla. 4th DCA 2001)).

"Because the mere presence of water on the floor is not enough to establish constructive notice, the record must contain additional facts in support of liability. . . ." *Delgado v. Laundromax, Inc.*, 65 So. 3d 1087, 1090 (Fla. 3d DCA 2011) (citation omitted) (first citing *Broz v. Winn–Dixie Stores, Inc.*, 546 So. 2d 83, 83 (Fla. 3d DCA 1989); and then citing *Winn Dixie Stores, Inc. v. White*, 675 So. 2d 702, 703 (Fla. 4th DCA 1996)); *see also Struck*, 2021 WL 5052557, at *2 ("The record must contain additional facts to create a *permissible inference* that the defendant had constructive notice." (emphasis added)). These have been referred to as "plus" facts. *See Encarnacion*, 211 So. 3d at 278. The presence of dirt, wheel marks, and/or footprints in a transitory foreign substance are often

5

sufficient "plus" facts to create a permissible inference about a defendant's constructive notice and survive summary judgment. *See, e.g.*, *Sutton*, 64 F.4th at 1169 (explaining that footprints and track marks were sufficient to create genuine issue of material fact); *Welch*, 357 So. 3d at 1279 ("[F]ootprints are a common feature of analogous slip and fall cases that survive summary judgment because they allow a jury to find that the substance was on the ground long enough for the defendant to discover it before the plaintiff's fall."); *Norman v. DCI Biologicals Dunedin, LLC*, 301 So. 3d 425, 431 (Fla. 2d DCA 2020) (reversing summary judgment where dirty water coupled with muddy footprints, skid mark, and lack of evidence establishing that the bathroom was inspected on the day of the incident led to genuine issue of material fact because inferences were not impermissibly stacked); *Colon v. Outback Steakhouse of Fla., Inc.*, 721 So. 2d 769, 771 (Fla. 3d DCA 1998) (explaining that dirty appearance of potato was sufficient for competing inference that "it had gone undetected on the floor for a sufficient period of time to place Outback on constructive notice"). However, the mere existence of "plus" facts is not dispositive to the issue as their existence must allow a jury to infer that the condition existed for a length of time sufficient to establish constructive notice "without assuming other facts." *See Encarnacion*, 211 So. 3d at 278 (citing *Wilson-Greene v. City of Mia.*, 208 So. 3d 1271 (Fla. 3d DCA 2017)).

Here, a "clear" liquid was on the floor with what looked like wheel marks and footprints running through it. The only testimony related to how long the liquid had been on the floor came from Peterson. He affirmatively explained that the liquid was on the floor for less than ten minutes as it was not on the floor when he was in the area.[2] Had this been the sum of the evidence in the record, a jury question may have existed. *See Sutton*, 64 F.4th at 1169. However, that was not the case here. The video showed a multitude of customers standing, walking, and pushing carts

---

[2] Based on the record, the video does not show exactly where Peterson was looking. However, this does not create a material issue of fact; it leaves Peterson's testimony "as the only evidence about what he looked at when he inspected the area." *See Oliver*, 291 So. 3d at 129.

through the exact spot where the liquid was found in the nine minutes between Peterson leaving the area and the incident. Any one of those customers could have dropped, spilled, or dripped the "clear" liquid onto the floor, potentially within just seconds of Appellant encountering the liquid. As such, the video combined with Peterson's testimony does not support a *permissible inference* that the condition existed for a sufficient length of time to establish that Walmart had constructive notice. *See Struck*, 2021 WL 5052557, at \*2; *cf. Norman*, 301 So. 3d at 430 (explaining that summary judgment evidence did not foreclose inference that water had been on floor for a prolonged period of time).

To reach Appellant's desired inference, a jury would have to impermissibly stack inferences. *See Broward Exec. Builders, Inc. v. Zota*, 192 So. 3d 534, 537 (Fla. 4th DCA 2016) ("The purpose of th[e] rule against stacking inferences is 'to protect litigants from verdicts based on conjecture and speculation.'" (quoting *Stanley v. Marceaux*, 991 So. 2d 938, 940 (Fla. 4th DCA 2008))).[3] In other

---

[3] The rule against impermissible inference stacking states:

> [I]f a party to a civil action depends upon the inferences to be drawn from circumstantial evidence as proof of one fact, it cannot construct a further inference upon the initial inference in order to establish a further fact unless it can be found that the original, basic inference was established to the exclusion of all other reasonable inferences.

*Wilson-Greene v. City of Mia.*, 208 So. 3d 1271, 1275 (Fla. 3d DCA 2017) (quoting *Cohen v. Arvin*, 878 So. 2d 403, 405 (Fla. 4th DCA 2004)). The federal equivalent to Florida's rule against impermissible inference stacking is reasonableness. *See Berbridge v. Sam's E., Inc.*, 728 F. App'x 929, 932 (11th Cir. 2018) ("Under federal law, an inference must be 'reasonable' to defeat a motion for summary judgment." (citing *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1326 (11th Cir. 1982))). In applying the federal standard, federal courts "aim to reach the same result that the Florida courts would reach based on the same facts" to "discourage forum shopping." *Id.*

words, such an inference is not reasonable. *See Struck*, 2021 WL 5052557, at \*1 ("[W]e make all reasonable inferences in the light most favorable to the non-moving party." (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001))). Under similar circumstances, courts have found the evidence presented to be insufficient to survive summary judgment. *See Wilson-Greene*, 208 So. 3d at 1276 (explaining that jury would have been required "to impermissibly stack inferences")*; see also McNeal v. Walmart Stores E., LP*, No. 2:21-cv-711-SPC-NPM, 2023 WL 145012, at \*6 (M.D. Fla. Jan. 10, 2023) ("[E]ven assuming it is reasonable to believe . . . that the footprint preceded McNeal's fall, it is unreasonable to stack on the inference that the dish soap had been on the floor for any meaningful length of time."); *Avila Andrade v. Wal-Mart Stores E., LP*, No. 22-23488-CV, 2023 WL 6846670, at \*4 (S.D. Fla. Oct. 17, 2023) ("Plaintiff cannot establish that the footprints, and in turn the dangerous condition, existed long enough to preclude summary judgment. At most, the water was on the floor for six minutes—the time between Ms. Calvera exiting the bathroom and the incident.").

Given these facts, the dissent's reliance on *Sutton* is misplaced. In *Sutton*, the appellant slipped on a grape she described as "dirty" with footprints and track marks running through it. 64 F.4th at 1168. The store employees presented testimony that they did not see the grape, and one of those employees "walked through the produce section around ten minutes before the accident." *Id*. The Eleventh Circuit determined that the employees' testimonies were not sufficient for summary judgment purposes. *Id*. at 1171–72. The Eleventh Circuit distinguished *Oliver* because in that case the "remaining body of evidence 'hardly establish[ed] that the dangerous condition existed for such a length of time that in the exercise of reasonable care the condition would have been known to the defendant." *Id*. at 1172 (alteration in original) (quoting *Oliver*, 291 So. 3d at 129). Additionally, the Eleventh Circuit noted that the employees' testimonies were "undermined by the account offered by [appellant] and the video itself." *Id*. Here, Peterson testified affirmatively that the liquid was on the floor for less than ten minutes because he would have seen it. The video does not undermine Peterson's version of events, nor does it conflict with Appellant's testimony. Rather, the video provides a reasonable

8

explanation for the presence of a "clear" liquid, dirty wheel marks, and footprints, all of which would have occurred and been created by any of the identified groups of customers, including the group that passed through just moments before Appellant, in the nine minutes prior to the incident but after Peterson left the area.

Once Walmart met its initial burden, the burden shifted to Appellant "to 'come forward with counterevidence sufficient to reveal a genuine issue.'" *See Oliver*, 291 So. 3d at 129 (quoting *Capotosto v. Fifth Third Bank*, 230 So. 3d 891, 892 (Fla. 4th DCA 2017)). Appellant was unable to do so. *See Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931–32 (7th Cir. 1995))).[4] Although a jury *could* choose to disbelieve Peterson's

---

[4] The dissent contends that affirming summary judgment in this case is "impermissibly corrosive to the sacrosanct right to trial by jury" as protected in the Seventh Amendment to the United States Constitution and article I of the Florida Constitution. Though the Seventh Amendment does not directly apply in state courts, *see Dep't of Rev. v. The Printing House*, 644 So. 2d 498, 500 (Fla. 1994), summary judgment under the circumstances here does not infringe on constitutional rights. *See Whitlow*, 48 Fla. L. Weekly D1647 (discussing historical context authorizing summary judgment in light of United States and Florida constitutions). Importantly,

> [a] trial judge, in turn, was free to determine whether the evidence presented was sufficient to warrant a jury determination as a matter of law, provided the judge limited the assessment to the quantum of evidence and not the weight of it. *Cf. Balt. & C. Line v. Redman*, 295 U.S. 654, 659–57 (1935) (re-affirming that the Seventh Amendment protects the role of the jury as the sole determiner of questions of fact but that "[w]hether the evidence was sufficient or otherwise was a question of law to be resolved by the court"); *Galloway [v. United States]*, 319 U.S. [372,] 392[ (1943)] (upholding use of directed verdict because "the Amendment was designed to

testimony, this is not enough to survive summary judgment under these circumstances. *See Zhanadova v. Wal-Mart Stores E., LP*, No. 23-10545, 2023 WL 6534188, at *4 (11th Cir. Oct. 6, 2023) ("At the summary judgment stage, '[i]t is not enough for the nonmoving party to merely assert[ ] that the jury might, and legally could, disbelieve the moving party's evidence. Instead, the nonmoving party must present affirmative[, concrete] evidence that would allow a reasonable jury to rule for [her]." (alterations in original) (quoting *Hinson v. Bias*, 927 F.3d 1103, 1115–16 (11th Cir. 2019))). As such, Appellant "needed to 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *See Whitlow*, 48 Fla. L. Weekly D1647 (quoting *Matsushita Elec.*, 475 U.S. at 586); *see also In re Amends. to Fla. Rule of Civ. Proc. 1.510*, 317 So. 3d 72, 76 (Fla. 2021) (explaining that "slightest doubt" no longer precludes summary judgment).

## <u>Conclusion</u>

Because the evidence presented, when viewed in the light most favorable to Appellant, would not allow a reasonable jury to find that the dangerous condition existed for a length of time sufficient to establish constructive notice, we affirm.

AFFIRMED.

EDWARDS, C.J., concurs.
SOUD, J., dissents with opinion.

---

preserve the basic institution of jury trial in only its most fundamental elements, not the great mass of procedural forms and details, varying even then so widely among common-law jurisdictions.").

*Id.* (second alteration in original); *see also Anderson*, 477 U.S. at 251 ("[B]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury *could properly proceed* to find a verdict for the party producing it . . . ." (emphasis added)).

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

SOUD, J., dissenting.

In this slip-and-fall case, Appellant Sandra Leftwich appeals the trial court's entry of summary judgment in favor of Wal-Mart. I respectfully dissent from this Court's affirmance and would reverse the summary judgment and remand for further proceedings. Simply put, a genuine dispute of material fact exists as to whether Wal-Mart had constructive knowledge of the transitory foreign substance that allegedly caused Leftwich's injury.

I.

In June 2019, Leftwich was at a Wal-Mart Supercenter in Hernando County, Florida. While there, she alleges she slipped and fell on a puddle of clear liquid, which caused her injury. Leftwich testified that there was a "good sized amount" of liquid on the floor, though she was unclear in her effort to more fully describe the size of the puddle.[1] Leftwich testified she saw dirty wheel tracks around the puddle and extending beyond the caution cones placed by employees after her fall. Leftwich's adult son, who was with her at Wal-Mart, testified he saw dirty wheel tracks and footprints in and around the liquid on the floor.

An individual employed at Wal-Mart at the time of Leftwich's fall was working further down the aisle where she fell. The (now-former) employee testified that when he was in the subject area shortly before the fall—an area where dry goods are displayed and water would not normally be expected—he did not see any liquid on the floor. He further testified in his deposition that he "always look[ed] for spills and debris that's on the floor because it affects

---

[1] Leftwich was somewhat equivocal and expressed uncertainty as to how to describe the amount of liquid on the floor. She described the puddle as "smaller than a basketball," and "bigger than a teacup saucer" but not "as big as a dinner plate." She described the puddle as covering less than one floor tile. Wal-Mart characterizes the puddle as a "small amount of liquid."

12

[his] quarterly bonus." Once he returned to the area after Leftwich's son asked for his assistance, he saw water about the size of a "Gatorade cap." The former employee testified—contrary to the testimony of Leftwich and her adult son—he did not see any wheel tracks or footprints having gone through the liquid.

Additionally, security video footage was presented as part of the summary judgment evidence.[2] The trial court found that the video showed events "leading up to" the fall and that *"[n]either the substance nor the source can be seen in the video."* The trial court further noted numerous people in the area during the "last ten minutes" before the fall (including the employee who observed the area before the fall and testified he did not see any liquid), all of whom traversed the area without incident.

Wal-Mart moved for summary judgment, arguing that Leftwich could not establish Wal-Mart had actual or constructive knowledge of the liquid on the floor that purportedly caused her fall. The trial court agreed in a detailed order and granted summary judgment in favor of Wal-Mart. This appeal followed.

II.

A trial court's order granting summary judgment is reviewed de novo. *See Welch v. CHLN, Inc.*, 357 So. 3d 1277, 1278 (Fla. 5th DCA 2023) (citing *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000)). To be entitled to summary judgment, a movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a). "[A] genuine dispute occurs when the evidence would allow a reasonable jury to return a verdict for [the non-moving] party." *Welch*, 357 So. 3d at 1278. This standard "closely mirrors the standard for directed verdict, in which the focus of the analysis is whether the evidence presents a sufficient disagreement to require submission to a jury." *Carpio v.*

---

[2] This video is not a part of the record before this Court. However, accepting the trial court's findings *in toto* as set forth in its Order as to Defendant Wal-Mart's Motion for Summary Judgment sufficiently demonstrates that reversal of the summary judgment is required.

13

*W. Beef of Fla., LLC*, 49 Fla. L. Weekly D86a (Fla. 4th DCA Jan. 3, 2024) (internal quotations and citations omitted). Importantly, as with the old standard, when considering a motion for summary judgment, a trial court—and this Court—still *must* view the evidence in a light most favorable to the non-moving party. *See Welch*, 357 So. 3d at 1278.

Of course, a plaintiff asserting a negligence claim must prove four elements: duty, breach, causation, and damages. *See id.* (citing *Peoples Gas Sys. v. Posen Constr., Inc.*, 322 So. 3d 604, 612 n.8 (Fla. 2021)). In cases such as this, alleging injuries from a slip and fall on a transitory foreign substance in a business establishment, "proof of the breach element is 'statutorily constrained' by section 768.0755, Florida Statutes." *See id.* (quoting *Encarnacion v. Lifemark Hosps. of Fla.*, 211 So. 3d 275, 278 (Fla. 3d DCA 2017)). That statute provides:

> (1) If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. **Constructive knowledge may be proven by circumstantial evidence** showing that:
>
> (a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or
>
> (b) The condition occurred with regularity and was therefore foreseeable.

§ 768.0755(1), Fla. Stat. (2018) (emphasis added).

As the plain language of this statute makes clear, "Florida law does not demand direct evidence about who or what caused the dangerous substance and when exactly it happened. Instead, circumstantial evidence that sufficiently establishes the dangerous condition was present for a long enough period of time is enough" to prove constructive knowledge of the existence of the

14

dangerous condition. *See Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166, 1172 (11th Cir. 2023) (citing section 768.0755(1)(a) in rejecting Wal-Mart's claim that plaintiff there failed to present evidence as to where substance came from and how and when it got on the floor). It is only "when there is nothing about the description of the substance that would indicate the length of time it was on the floor, [that] courts have precluded the jury from deciding the issue of negligence." *Id.* at 1170 (internal quotations and citations omitted).

When considering circumstantial evidence offered to establish constructive knowledge as contemplated by section 768.0755(1)(a), the presence of the substance on the floor alone will not itself create a jury issue sufficient to survive summary judgment. Rather, there must be evidence in addition to the foreign substance—a "plus"—from which the jury may reasonably conclude the substance was present for a sufficient length of time that Wal-Mart in the exercise of ordinary care should have known of its existence. *See Welch*, 357 So. 3d at 1279 (citing *Encarnacion*, 211 So. 3d at 278); *see also Delgado v. Laundromax, Inc.*, 65 So. 3d 1087, 1090 (Fla. 3d DCA 2011).

Accordingly, "[i]n trying to assess *how long* a substance has been sitting on a floor, courts look to several factors, including 'evidence of footprints, prior track marks, changes in consistency, [or] drying of the liquid.'" *Welch*, 357 So. 3d at 1278–79 (quoting *Torres v. Wal-Mart Stores E., L.P.*, 555 F. Supp. 3d 1276, 1283 (S.D. Fla. 2021)). "They also consider if the 'offending liquid' was 'dirty' or 'scuffed.'" *Id.* (quoting *Torres*). As this Court previously has emphasized, "[i]ndeed, footprints are a common feature of analogous slip and fall cases that survive summary judgment because they allow a jury to find that the substance was on the ground long enough for the defendant to discover it before the plaintiff's fall." *Welch*, 357 So. 3d at 1279; *see also Sutton*, 64 F.4th at 1170–71 (quoting *Welch*).

In this case before us, there is legally insufficient evidence that Wal-Mart had actual knowledge of the presence of the liquid causing Leftwich to fall. However, in viewing the evidence in light most favorable to Leftwich—as this Court must under Rule 1.510, Florida Rules of Civil Procedure—there is sufficient evidence that

15

would *allow* a jury to conclude that Wal-Mart, in exercising reasonable and ordinary care, should have known of the presence of the liquid. *See Welch*, 357 So. 3d at 1278.

Leftwich herself testified there was a "good sized amount" of liquid on the floor and that she saw dirty wheel tracks around the puddle and extending beyond the caution cones placed by employees after her fall. Further, Leftwich's adult son testified he saw dirty wheel tracks and footprints in and around the liquid on the floor. This evidence is sufficient to preclude summary judgment.[3]

The fact that the former Wal-Mart employee testified he was in the area where Leftwich's fall occurred ten minutes before and did not see any liquid on the floor simply does not entitle Wal-Mart to summary judgment. This is true even when considered together with security video of the area before the fall, which does not show the substance or its source (and shows numerous people in the area who proceed safely through the aisle).

To be certain, a jury may well have returned a verdict in Wal-Mart's favor and accepted the former employee's testimony that there was no liquid on the floor when he passed by, and inferred that the liquid must have been deposited thereafter (thus not allowing enough time for Wal-Mart to have constructive knowledge of the liquid). That would be a logically plausible and legally permissible conclusion. However, it is equally logically plausible and legally permissible for that jury to reject the employee's testimony and, accepting the testimony of Leftwich and her son regarding the footprints and track marks (together with the security video of numerous customers in the same area prior to the fall), conclude the liquid was present for sufficient time

---

[3] Indeed, "Florida courts have found that a plaintiff's testimony alone can be sufficient to defeat a summary judgment motion if the testimony includes other facts that create a question of fact about whether the foreign substance was on the ground for a significant length of time." *Carpio*, 49 Fla. L. Weekly D86a; *see also Welch*, 357 So. 3d at 1279; *Sutton*, 64 F.4th at 1171.

before Leftwich fell that Wal-Mart knew or should have known of the liquid on the floor.[4] This disputed evidence is not only material (as required by Rule 1.510) it is to the very core of this case. "Time and again, Florida's appellate courts have found constructive notice when the offending liquid was dirty, scuffed, or had grocery-cart track marks running through it, or if there was [o]ther evidence such as footprints, prior track marks, changes in consistency, [or] drying of the liquid." *Sutton*, 64 F.4th at 1170 (internal quotations and citations omitted). Whatever decision is to be made on the merits of Leftwich's claim, that decision belongs to a jury, not a panel of judges.

The majority acknowledges the testimony of Leftwich and her adult son that, in addition to the liquid, there were footprints and cart tracks in and around the liquid. The majority even suggests that "[h]ad this been the sum of the evidence in the record, a jury question may have existed." However, the majority then relies heavily on the video that

> showed a multitude of customers standing, walking, and pushing carts through the exact spot where the liquid was found in the nine minutes between [the former employee] leaving the area and the incident. Any one of those customers could have dropped, spilled, or dripped the "clear" liquid onto the floor, potentially within just seconds of Appellant encountering the liquid. As such, the video combined with [the former employee's] testimony does not support a *permissible inference* that the condition existed for a sufficient length of time to establish that Walmart had constructive notice.

Yet, this weighing of evidence—and, respectfully, that is precisely what the majority has done—is not the prerogative of the

---

[4] There is no stacking of inferences necessary to reach this conclusion. The only inference made, that the footprints and track marks circumstantially prove enough time had passed that Wal-Mart should have known of the liquid, is the very inference expressly permitted by section 768.0755(1).

17

trial court or this court, at this stage. We must view the evidence in a light most favorable to Leftwich. The former Wal-Mart employee testified he did not see the liquid on the floor when he passed through the subject area approximately nine minutes prior to the fall. Leftwich countered that testimony with her own testimony and that of her son, regarding the footprints and track marks in and around the liquid. As testified to, the footprints and track marks have been recognized as sufficient "plus" evidence—sufficient circumstantial evidence permitted by section 768.0755(1)—to allow a jury to find constructive knowledge. Florida courts have long held that such evidence requires the submission of the case to a jury. As succinctly stated in *Sutton*, "When taken in a light most favorable to the non-moving party, this corpus of evidence is sufficient to create a genuine issue of material fact." *Sutton*, 64 F.4th at 1172.

Importantly, *Sutton* is a case materially similar to the one before this court.[5] There, the Eleventh Circuit reversed summary judgment entered in favor of Wal-Mart in a slip-and-fall case. The plaintiff testified she slipped on one "squished grape" that she saw only after falling. *Id.* at 1168. While on the floor, the plaintiff saw one track mark a "few inches away" and that "the grape was dirty." *Id.* The plaintiff also noted footprints, though she did not know whose they were, even at one point saying the footprints may have been hers. *Id.*

The evidence in *Sutton* also revealed that two different employees walked through the area where the fall occurred: the first employee inspected the floor an hour before the fall and again thirty minutes prior to the fall. *Id.* The second employee inspected the floor *approximately ten minutes* before the fall. *Id.* Neither employee observed a grape on the floor prior to the plaintiff's fall. *Id.* Additionally, a two-hour video from Wal-Mart's surveillance cameras confirmed the employees walked by at those times, but it

---

[5] The federal district court in *Sutton* applied Florida substantive law, as the case arose in Florida and was before that court based upon its diversity jurisdiction. See *Sutton*, 64 F.4th at 1168 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

18

did "not conclusively establish much" else, such as who knocked over or dropped the grape and when. *Id.* After a considerable analysis of Florida caselaw, the *Sutton* court reversed the summary judgment.

> [T]his case falls cleanly into the set of Florida cases that require a jury to decide whether the substance sat on the floor long enough to establish constructive notice. . . . Although a jury might eventually decide that the footprints belonged to Sutton, "an equally compelling inference from the dirty appearance of the [grape] is that it had gone undetected on the floor for a sufficient period of time to place [Wal-Mart] on constructive notice." *Colon* [*v. Outback Steakhouse of Fla., Inc.*], 721 So. 2d [769,] 771[ (Fla. 3d DCA 1998)]. Additionally, however, Sutton's testimony is clear that she saw a track mark only a few inches away, and that also afforded the reasonable inference that the grape had been on the ground for a sufficient period of time to establish constructive notice. All told, a jury must decide the case.

*Id.* at 1171 (citations omitted).

Just so, here. Given the conflicting evidence *sub judice*, and the permissible inferences resulting therefrom, a jury must decide this case. Granting summary judgment, in the face of such a clear and genuine dispute on a core issue in the case, is contrary to established Florida law[6]—and impermissibly corrosive to the sacrosanct right to trial by jury so valued since Florida was admitted to the Union. The Florida Constitution provides: "The

---

[6] If the Florida Legislature wishes to further "statutorily constrain" the proof required to establish a breach of duty in slip-and-fall cases, *see Welch*, 357 So. 3d at 1278, it remains entirely free to do so. However, until such time, Florida courts must cling tightly to the statutes as written. Doing so here, when circumstantial evidence is expressly permitted to establish constructive knowledge and the duty that comes therewith, simply forbids summary judgment in this case.

right of trial by jury shall be secure to all and remain inviolate." Art. I, § 22, Fla. Const.[7] The priority, purpose, and wisdom of the right to jury trial in civil cases is made clear by then-Justice Rehnquist's thorough analysis in *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979) (Rehnquist, J., dissenting), when considering this right in federal courts. "Trial by a jury of laymen rather than by the sovereign's judges was important to the founders because juries represent the layman's common sense, the 'passional elements in our nature,' and thus keep the administration of law in accord with the wishes and feelings of the community." *Id.* at 343–44 (citation omitted), *quoted in Torres*, 555 F. Supp. 3d at 1288.

### III.

Though obvious, it is important to note that reversal of summary judgment would not be a finding in favor of Leftwich on her claim. Rather, as this Court recently stated in *Welch*, reversal is "merely a recognition that the evidence is such that a reasonable jury *could* find for the plaintiff." *Welch*, 357 So. 3d at 1280. Wal-Mart may well prevail in this case, but it simply cannot do so at the summary judgment stage. Accordingly, I would reverse the summary judgment and remand for further proceedings.

---

[7] The right to trial by jury is so fundamental in our State that it was secured in 1838 by the first Constitution of Florida (written in preparation for statehood), which provided: "That the great and essential principles of liberty and free government may be recognized and established, we declare: . . . That the right of trial by jury shall forever remain inviolate." Art. I, § 6, Fla. Const. (1838). And, of course, the right to trial by jury is so foundational to our Republic, it is secured, for federal purposes, in the Seventh Amendment to the U.S. Constitution. *See* Amend. VII, U.S. Const.